UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

| | |
|---|---|
| DAVID ROLAND HINKSON,<br><br>　　　　　Petitioner,<br><br>　v.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　　Respondent. | Criminal No.: 3:02-cr-142-RCT<br>Criminal No.: 1:04-cr-127-RCT<br>Civil No.: CIV 1:12-cv-196-RCT<br><br>ORDER DENYING RECUSAL MOTION |

**OVERVIEW**

David Roland Hinkson ("Hinkson") moves to recuse the undersigned judge pursuant to 28 U.S.C. § 455(a).  Hinkson's recusal motion was filed concurrently with a lengthy 28 U.S.C. § 2255 habeas petition, through which Hinkson seeks to vacate his convictions for soliciting the murders of three federal officials, including a United States District Judge, an Assistant United States Attorney ("AUSA"), and a Special Agent of the Internal Revenue Service ("IRS") Criminal Investigation Division.  *See* Case No. 1:12-cv-196-RCT, Doc. No. 1, Motion to Vacate, Set Aside or Correct Sentence (2255), Memorandum in Support of Ground Two; *see*

*also* Case No. 1:04-cr-127-RCT (the criminal solicitation case).  After careful consideration of Hinkson's voluminous pleadings filed in this collateral proceeding, the lengthy record from Hinkson's two federal criminal trials presided over by the undersigned, and Hinkson's previous unsuccessful recusal motions against the undersigned (for which Hinkson did not seek appellate review), the motion is denied.

## FACTS[1]

### I.   Hinkson's criminal trials and convictions.

In 2002, Hinkson was indicted for financial crimes including money laundering, income tax evasion, failure to file tax returns, and failure to collect and pay payroll taxes.  *See* Case No. 3:02-cr-00142-BLW-RCT, Doc. No. 1, Indictment.  In 2004, while awaiting trial on his tax case, a federal grand jury in Idaho returned an eleven-count indictment against Hinkson for soliciting the murders of three federal officials involved in the tax case: United States District

---

[1]  Filed concurrently with this Order is a separate Memorandum Decision addressing and denying as previously adjudicated on direct appeal, procedurally defaulted, or, alternatively on the merits, Hinkson's multiple claims for habeas corpus relief.  That decision explains the facts and history of Hinkson's prior criminal trials, and is incorporated herein by reference to further explain the basis for denial of this latest recusal motion.

<u>HINKSON V. UNITED STATES</u>, 3:02-CR-142-RCT;
**1:04-CR-127-RCT; 1:12-CV-196-RCT**
**ORDER DENYING RECUSAL MOTION    2**

Judge Edward J. Lodge (originally assigned to preside over the matter), AUSA Nancy Cook (the prosecutor), and IRS Special Agent Steven Hines (the case agent).  *See* Case No. 1:04-cr-00127-RCT, Doc. No. 37, Superceding Indictment.

Hinkson's criminal tax trial was eventually transferred to, and conducted before, the undersigned judge in April and May of 2004.  A jury convicted Hinkson in the tax case on May 4, 2004.  *See* Case No. 3:02-cr-00142-BLW-RCT, Doc. No. 307, Verdict.  Hinkson's murder-solicitation trial commenced before the undersigned in January of 2005. A jury convicted Hinkson in the murder-solicitation case on January 27, 2005.  *See* Case No. 1:04-cr-00127-RCT, Doc. No. 190, Jury Verdict.  The Court sentenced Hinkson to consecutive sentences of ten years' imprisonment for each of the three murder-solicitation convictions and three years for making the solicitations while on pretrial release from his tax case.

## II. Hinkson's demonstrated pattern of vexatious conduct.

As previously explained by this Court, Hinkson has a long history of obstructing justice.  *See* Case No. 1:04-cr-127-RCT, Doc. No. 244, Memorandum Decision and Order at 23 (noting Hinkson's "repeated and persistent misconduct and abuse of the legal system").  Contemporaneous with his criminal trials, Hinkson "engaged in protracted frivolous civil litigation in Federal District Court

seeking to abuse the legal process and intimidate federal officials from performing their duties." *Id.* at 23–24; *see also* Case No. 2:02-cv-171-EJL, Doc. No. 80, Order Granting Motion to Dismiss at 6 (summarily dismissing Hinkson's *Bivens* action). Hinkson also filed a number of administrative complaints against the federal officials involved in his tax case,[2] each of which was dismissed, denied, or deemed unfounded. *See* Case No. 1:04-cr-127-RCT, Doc. No. 244, Memorandum Decision and Order at 23.

As a component of this general strategy to "game the system," *see id.* at 27, Hinkson previously sought recusal or reassignment of every judge who has presided over his federal criminal proceedings, including U.S. District Judge Edward J. Lodge,[3] Chief U.S. District Judge B. Lynn Winmill,[4] U.S. Magistrate

---

[2] *See* Case No. 1:04-cr-127-RCT, Doc. No. 244, Memorandum Decision and Order at 25–26 (listing complaints Hinkson filed against federal agents with "the Commissioner of Internal Revenue, the Chief Postal Inspector, a District Director of the I.R.S., and the U.S. Attorney General" as well as "internal affairs-type complaints with the Office of Inspector General of the Department of the Treasury" and "the U.S. Department of Justice Office of Professional Responsibility").

[3] *See* Case No. 1:04-127-RCT, Doc. No. 9, Motion for Recusal of Judge Winmill and Magistrate Judge Williams at 4 (Hinkson, noting that Judge Lodge had no choice but to withdraw from the case because Hinkson's "alleged" threats "obviously were originally communicated *ex parte* to Judge Lodge"); Doc. No. 244 at 25 (the Court, noting that Hinkson "successfully forced the recusal of Judge

Judge Michel Williams,[5] and the undersigned U.S. Circuit Judge Richard C. Tallman (twice).[6]

Recognizing Hinkson's penchant for recusal motions, this Court previously made a factual finding that Hinkson's "*modus operandi* [is] to harass every court and to seek recusal of all judges against whom he harbors substantial resentment." *Id.* at 29 (denying Hinkson's motion for new trial, including his renewed argument

---

Lodge").

[4]   *See* Case No. 1:04-127-RCT, Doc. No. 9, at 4 (Hinkson, arguing for Judge Winmill's recusal because "Judge Winmill presumably had off-the-record conversations with Judge Lodge and/or other government officials regarding [the murder solicitation] allegations"); *see also* Case No. 3:02-cr-142-RCT, Doc. No. 242, Motion to Reassign Entire Case, Including Detention Issue, to Judge Tallman at 1 (Hinkson, arguing that Chief Judge Winmill should not preside over previously scheduled detention hearing, but rather should "reassign the entire case, in particular the detention issue, to Judge Tallman").

[5]   *See* Case No. 1:04-127-RCT, Doc. No. 9 at 4 (Hinkson, arguing for Judge Williams's recusal because "Judges Winmill and Williams obviously have a close working relationship with Judge Lodge, an alleged victim of the alleged threats.").

[6]   *See* Case No. 1:04-127-RCT, Doc. No. 117, Motion to Recuse Judge Tallman at 3 (Hinkson, arguing for the undersigned's recusal based on Hinkson's threats against the undersigned), *motion denied*, Doc. No. 122 (Nelson, T.G., J.) ("Unless one veers into the realm of the hypothetical, one can find no support for [Hinkson's recusal] argument, and even then, any support is dubious."); *see also* Doc. No. 224, Motion for New Trial at 8 (renewing argument to recuse the undersigned); Doc. No. 322, Motion to Recuse Judge Tallman at 1 (present motion).

**HINKSON V. UNITED STATES, 3:02-CR-142-RCT;**
**1:04-CR-127-RCT; 1:12-CV-196-RCT**
**ORDER DENYING RECUSAL MOTION   5**

for the undersigned's recusal). The Court predicted then that "because [Hinkson] has previously and repeatedly engaged in similar misconduct directed at other judges, prosecutors, investigators, attorneys, and witnesses, it is highly probable that he will continue to engage in similar and additional misconduct in the future." *Id.* at 30. As anticipated—and for the third time—Hinkson seeks the undersigned's recusal.

## DISCUSSION

### I.   Section 455(a) Standard.

Section 455(a) states that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The Ninth Circuit has interpreted this provision to mean that a judge should disqualify himself when a reasonable person aware of all the pertinent facts might reasonably question the judge's impartiality. *United States v. Holland*, 519 F.3d 909, 913 (9th Cir. 2008). Recusal is thus "justified either by actual bias or the appearance of bias." *Yagman v. Republic Ins.*, 987 F.2d 622, 626 (9th Cir. 1993).

A judge ordinarily need disqualify himself only when the indications of bias come from extrajudicial sources. *Liteky v. United States*, 510 U.S. 540, 554–56

(1994).  Consistent with this general rule, a judge's rulings almost never support a recusal motion.  *Id.* at 555.  Even when the motion complains of the judge's treatment of the movant at a different stage of litigation, the "judge's prior adverse ruling is not sufficient cause for recusal."  *United States v. McTiernan*, __ F.3d __, slip op. at 9468 (9th Cir. Aug. 20, 2012) (internal quotation marks omitted).  Even a "judge's conduct during the proceedings should not, except in the 'rarest of circumstances' form the sole basis for recusal under § 455(a)."  *Holland*, 519 F.3d at 914 (quoting *Liteky*, 510 U.S. at 555) (footnote omitted).  Thus, the fact that a judge who presided over a trial may "upon completion of the evidence, be exceedingly ill disposed towards the defendant, who has shown to be a thoroughly reprehensible person," the judge is "not thereby recusable for bias or prejudice."  *Liteky*, 510 U.S. at 550–51.

It is firmly established law in our circuit that it is the challenged judge who should rule on the recusal motion.  *See United States v. Studley*, 783 F.2d 934, 940 (9th Cir. 1986).

## II.   Hinkson's Proposed Grounds for the Undersigned's Recusal.

Hinkson offers three general arguments for why the undersigned should recuse.  First, he argues that the undersigned's rulings demonstrate bias.  Second,

he argues that the practice of circuit judges sitting by designation as district judges, as the undersigned did in the underlying tax and murder-solicitation trials, demonstrates bias. Finally, he alleges that the undersigned held an ex parte meeting with a government witness during the murder-solicitation trial, demonstrating bias. Each of these claims fail.

### A. This Court's Adverse Rulings.

Hinkson accuses the undersigned of "miscreant rulings" during the underlying criminal trials, and argues that such rulings require recusal. *See* Case No. 1:04-cr-127-RCT, Doc. No. 322, Motion to Recuse Judge Tallman.[7] As explained above, however, the undersigned's adverse rulings at trial, standing alone, will not support recusal under § 455(a). *See, e.g.*, *Holland*, 519 F.3d at 913–14 (explaining that the recusal statute "generally requires as the basis for recusal something other than rulings, opinions formed or statements made by the judge during the course of trial"). The undersigned's prior rulings do not require

---

[7] Hinkson's recusal motion challenges the undersigned's "erroneous" rulings pertaining to: (1) the testimony of government witnesses; (2) a note from a juror to the Court inquiring about Hinkson's mental health; and (3) the withdrawal of defense counsel Wesley Hoyt. These rulings are fully discussed in the Court's concurrently filed Memorandum Decision addressing and denying on the merits Hinkson's multiple claims for habeas corpus relief.

recusal in this case.

### B.    Circuit Judges Sitting by Designation.

Hinkson accuses the undersigned of judicial misconduct for sitting by designation as a district judge in the underlying criminal cases, knowing that the cases "ultimately would be presented to the Ninth Circuit Court of Appeals."  Doc. No. 322, Motion to Recuse Judge Tallman at 5.  Hinkson believes that a judge in this situation is able to exert undue influence on his peers such that they rubber-stamp his rulings.  *Id.* ("Because the Ninth Circuit is Judge Tallman's home court, he has had the unhampered opportunity to unfairly prejudice other judges of the Ninth Circuit against me so as to ensure that the underlying unfair, unlawful and unconstitutional convictions would be sustained.").

As a preliminary matter, Hinkson's allegation of undue influence is plainly inconsistent with the history of his case.  As Hinkson concedes, a three-judge panel of the Ninth Circuit Court of Appeals initially <u>reversed</u> this Court's decision in the murder-solicitation case, and remanded the matter for a new trial.  *United States v. Hinkson*, 526 F.3d 1262 (9th Cir. 2008).  Notwithstanding the undersigned's formal recusal from all appellate proceedings in the matter, a majority of nonrecused active judges voted to rehear Hinkson's murder-solicitation appeal en

banc. *See United States v. Hinkson*, 547 F.3d 993 (2008) ("Upon the vote of a majority of nonrecused active judges, it is ordered that this case be reheard en banc . . . . Judges Silverman and Tallman did not participate in the deliberations or vote in this case."). Upon rehearing, a divided en banc panel of the Ninth Circuit affirmed Hinkson's murder conviction. *United States v. Hinkson*, 585 F.3d 1247 (9th Cir. 2009) (7-4). The United States Supreme Court denied Hinkson's petition for certiorari. *See Hinkson v. United States*, 131 S. Ct. 2096 (2011). This case history does not present any evidence of undue influence prejudicing Hinkson's appeal.

As to his general argument against circuit judges sitting as district judges, this practice is as old as the Republic itself. *See Del Vecchio v. Ill. Dep't of Corr.*, 31 F.3d 1363, 1390 (7th Cir. 1994) (Easterbrook, J., concurring). District and Circuit Judges regularly sit by designation on each other's courts. *See* Richard B. Saphire & Michael E. Solimine, *Diluting Justice on Appeal?: An Examination of the Use of District Court Judges Sitting by Designation on the United States Courts of Appeals*, 28 U. Mich. J. L. Reform 351, 356 (1995) ("[E]ach year a significant number of federal appellate cases are decided by three-judge panels consisting of one or more [district] judges . . . ."). Importantly, as other districts

have recognized, "the practice [of appellate judges sitting as district judges by designation] is not uncommon," and, as was initially the case in Hinkson's direct appeal, "every so often a circuit judge sitting as a district judge in his or her own circuit is reversed on appeal." *Edlund v. Montgomery*, 355 F. Supp. 2d 987, 991 (D. Minn. 2005). Hinkson does not explain why this long-standing, well-established practice impairs the undersigned's impartiality in the present case. His claim of undue influence is thus rejected.

### C. Alleged Ex Parte Contact with Government Witness.

Finally, Hinkson attaches an affidavit from his former counsel, Wesley Hoyt. Hoyt's affidavit states that, on one occasion during trial, he observed government witness Elven Joe Swisher ("Swisher") leaving the visiting judge's chambers at the Boise federal courthouse. Hoyt also states that Swisher appeared to be saying goodbye but acknowledges that he did not see anyone else present besides Swisher. It is curious that Hoyt would view such an exchange but fail to contemporaneously raise the issue and seek clarification with this Court.

Even taking Hoyt's assertions as true, however, the innocuous content of the affidavit is not sufficient to warrant recusal. Hoyt states that he saw no member of the prosecution present and overheard nothing of substance. "It is not suggested or

implied that any improper conduct took place in this conference or that the merits of the case were discussed." *Willenbring v. United States*, 306 F.2d 944, 946 (9th Cir. 1962).  Without more, Hoyt's affidavit is simply insufficient.  "Rumor, speculation, beliefs, conclusions, innuendo, suspicion, opinion, and similar non-factual matters do not form the basis of a successful recusal motion." *Sivak v. Hardison*, 658 F.3d 898, 926 (9th Cir. 2011) (internal quotation marks and brackets omitted).

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED that Hinkson's motion for recusal is DENIED.

SO ORDERED this 28th day of August, 2012.

*Richard C. Tallman*
RICHARD C. TALLMAN
United States Circuit Judge
Sitting by designation