IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Case No. 3:02-cr-00142-BLW-RCT-1 |
| ) | Case No. 1:04-cr-00127-RCT |
| ) | Case No. 1:12-cv-00196-RCT |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **MEMORANDUM DECISION** |
| ) | **AND ORDER DENYING** |
| ) | **MOTION TO DISQUALIFY** |
| DAVID ROLAND HINKSON, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| _____ ) | |

### INTRODUCTION

Pending before the Court is Defendant David Roland Hinkson's third Motion to Disqualify Judge Richard C. Tallman, received on August 30, 2021.[1]

---

[1] Hinkson filed the present motion in both of his above-captioned District of Idaho criminal cases. Because of the expansive and complex procedural and factual history related to this defendant—and multiple underlying cases—this Order will refer and cite to the underlying cases using the following defined terms for simplicity. Hinkson's first case, relating to criminal tax and Federal Food, Drug, and Cosmetic Act charges, is assigned **Case No. 3:02-cr-00142-BLW-RCT-1**, and is referred to in this Order as the "***Tax Case***." Hinkson's second case, relating to solicitation of murder charges, is assigned **Case No. 1:04-cr-00127-RCT**, and is

*Solicitation Case*, Doc. No. 394; *Tax Case*, Doc. No. 452.  For the reasons explained below, the Court DENIES Hinkson's motion.

## BACKGROUND

The Court has recounted the details of Hinkson's convictions and sentences numerous times in its recent orders.  *See Solicitation Case*, Doc. Nos. 373, 384; *Tax Case*, Doc. No. 446.  Accordingly, the Court will only briefly detail them here.

In May 2004, a Boise federal jury found Hinkson guilty of twenty-six criminal tax violations stemming from his operation of WaterOz, a highly profitable water bottling company in the Idaho Panhandle whose products Hinkson claimed could cure various maladies and diseases.  *See Tax Case*, Doc. No. 307; *Solicitation Case*, Doc. Nos. 269-1, at 59:3–60:14; 269-3, at 96:24–97:6.  While awaiting trial on the tax case, Hinkson was indicted for soliciting the murders of three federal officials involved in the tax prosecution:  the Honorable Edward J. Lodge, the United States District Judge who was initially assigned to preside over the tax trial, Assistant United States Attorney Nancy Cook, the lead prosecutor, and IRS Criminal Investigation Division Special Agent Steven Hines, the case agent.  *See Solicitation Case*, Doc. No. 37.  A second Boise jury ultimately convicted Hinkson of three counts of soliciting those murders, and this Court

---

referred to in this Order as the "**Solicitation Case**."  Hinkson also filed a petition for writ of habeas corpus regarding the *Solicitation Case* in 2012, **see Case No. 1:12-cv-00196-RCT**, which is referred to in this Order as the "**Habeas Petition**."

sentenced Hinkson on all of the counts of conviction from his first and second trials—totaling nearly five weeks and the testimony of dozens of witnesses—and from his guilty pleas to attendant Federal Food, Drug, and Cosmetic Act violations, at a consolidated sentencing proceeding that spanned two days, April 25, 2005, and June 3, 2005.  *See Solicitation Case*, Doc. Nos. 245, 265, 269–70, 271-1 (partially sealed); *Tax Case*, Doc. Nos. 369, 375–76.

Because of the aggravated nature of Hinkson's criminal behavior, including his continuing attempts to obstruct justice while criminal proceedings were pending against him, the Court imposed a consolidated sentence of 516 months' imprisonment, as well as a fine of $100,000.  Hinkson, who is now 65 years old, has served approximately 221 months; his anticipated release date is April 21, 2040.[2]  He has never accepted responsibility for any of the tax evasion and murder-for-hire solicitations in which he engaged, and the Federal Bureau of Prisons (BOP) reports that "Hinkson has made only minimum payments in $25 increments totaling $250 during his incarceration so far, and he appears to have made no payments toward the [$2.5 million in] taxes he owes." *Solicitation Case*, Doc. No. 373, at 3; *see id.*, Doc. No. 271-1, at 526:10–13 (partially sealed).

---

[2] *See* https://www.bop.gov/inmateloc/; *see also Solicitation Case*, Doc. No. 276 (signed amended judgment).

On May 21, 2020, Hinkson filed his first *pro se* emergency motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), asserting that he faced severe risk due to the COVID-19 pandemic. *See id.*, Doc. No. 366. After full briefing, the Court denied that motion on July 7, 2020, finding that Hinkson failed to meet any of the three requirements for compassionate release.[3] *Id.*, Doc. No. 373. Hinkson filed a notice of appeal on July 27, 2020. *Id.*, Doc. No. 375. On March 25, 2021, the United States Court of Appeals for the Ninth Circuit affirmed this Court's denial of Hinkson's release motion. *United States v. Hinkson*, 841 F. App'x 32 (9th Cir. 2021).

On January 26, 2021, while his appeal of the Court's denial of his first motion was still pending with the Ninth Circuit, Hinkson filed his third *pro se* emergency motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), asserting that his recent diagnosis of Stage IV colon cancer constituted an extraordinary and compelling reason for relief and that he was also infected with COVID-19. *See Solicitation Case*, Doc. No. 379; *Tax Case*, Doc. No. 445.

---

[3] While the briefing of Hinkson's first motion was still underway, Hinkson filed a second *pro se* emergency motion for compassionate release. *See Solicitation Case*, Doc. No. 372. In that motion, Hinkson argued that his consecutive sentences were imposed in violation of the law and therefore constituted an extraordinary or compelling reason for release under 18 U.S.C. § 3582(c)(1)(A)(i). The Court denied that motion in a minute order, finding that Hinkson's untimely and procedurally defaulted second motion constituted an improper collateral attack on his sentence under 28 U.S.C. § 2255(h). *See id.*, Doc. No. 374.

On March 15, 2021, after full briefing and review, including careful review of Hinkson's prison medical and disciplinary records submitted under seal by the government, the Court issued an indicative ruling under Federal Rule of Criminal Procedure 37 explaining that it would deny Hinkson's third motion.  *See Solicitation Case*, Doc. No. 384; *Tax Case*, Doc. No. 446.  In its order, the Court stated it was "sympathetic to [Hinkson's] serious medical condition, and wishe[d] him success in treatment," but that it was unnecessary to enter a finding as to whether Hinkson's Stage IV colon cancer diagnosis constituted an extraordinary and compelling reason for release.[4]  *See id.*, at 14.  Instead, the Court found that the § 3553(a) factors did not weigh in favor of release and that Hinkson remained a danger to others and to the community, notwithstanding his medical circumstances. As the Court explained,

> Hinkson was convicted of soliciting others to murder federal officials on his behalf.  Therefore, the violent threat he poses to others does not depend on his own ability to engage in such violence, but is based on his financial wherewithal to pay for such endeavors, and the danger is aggravated, not lessened, by his serious illness.  His motions and prison record demonstrate no inclination to accept responsibility for his prior actions or conform his behavior while incarcerated and, as the Court previously found, he likely has significant funds at his disposal.  *See* [*Solicitation Case*], Doc. No. 271-1[,] at 617:12–20.  Under the statute discussed above, the Court would have to find that "the defendant is not a danger to the safety of any other person or to the community."  The Court simply cannot make that finding as to this defendant on these facts.

---

[4] The medical records did not corroborate Hinkson's assertion that he had been diagnosed with COVID-19.

*Id.*, at 13–14.

Hinkson filed a motion for reconsideration on April 2, 2021. *See Solicitation Case*, Doc. No. 388; *Tax Case*, Doc. No. 449. After further briefing and review of additional medical records, the Court denied reconsideration on April 27, 2021.[5] *See Solicitation Case*, Doc. No. 392; *Tax Case*, Doc. No. 450. Hinkson did not appeal from the denial of his third motion for compassionate release or from the denial of reconsideration. Rather, on August 30, 2021, he filed the present motion asking for the third time in seventeen years that, pursuant to 28 U.S.C. § 455(a), the undersigned judge "recuse himself from presiding over any pending or future matters involving the defendant."[6] *Solicitation Case*, Doc. No. 394; *Tax Case*, Doc. No. 452.

## LEGAL STANDARD

Section 455(a) states that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The Ninth Circuit has interpreted this provision to mean that a judge should disqualify himself when a

---

[5] In that order, the Court also addressed a "supplement" filed by a non-attorney inmate on behalf of Hinkson on March 16, 2021. *See Solicitation Case*, Doc. No. 385.

[6] The Court notes that there are currently no matters involving Hinkson pending before it except for the present disqualification motion.

6

reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned. *United States v. Holland*, 519 F.3d 909, 913 (9th Cir. 2008). Recusal is thus "justified either by actual bias or the appearance of bias." *Yagman v. Republic Ins.*, 987 F.2d 622, 626 (9th Cir. 1993). However, "[t]he reasonable person is not someone who is hypersensitive or unduly suspicious, but rather is a well-informed, thoughtful observer." *Holland*, 510 F.3d at 913 (internal quotation marks and citation omitted). And, "[t]he standard must not be so broadly construed that it becomes, in effect, presumptive, so that recusal is mandated upon the merest unsubstantiated suggestion of personal bias or prejudice." *Id.* (internal quotation marks and citation omitted).

"[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Further, opinions "formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* Even when the motion complains of the judge's treatment of the movant at a different stage of litigation, the "judge's prior adverse ruling is not sufficient cause for recusal." *United States v. McTiernan*, 695 F.3d 882, 893 (9th Cir. 2012) (internal quotation marks and citation omitted). "[T]he challenged judge himself should rule on the

legal sufficiency of a recusal motion in the first instance." *United States v. Studley*, 783 F.2d 934, 940 (9th Cir. 1986).

## ANALYSIS

Hinkson asserts three grounds for why the undersigned judge should recuse from any pending or future matters involving the defendant. First, Hinkson argues that it was an "extrajudicial exercise of authority" for the Court to contact the warden at the Federal Medical Center/Butner—where Hinkson is housed—by providing a copy of the July 7, 2020, order denying Hinkson's first *pro se* emergency motion for compassionate release explaining the Court's conclusion that Hinkson does not meet all of the elements for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). *Solicitation Case*, Doc. No. 394, at 1–5; *Tax Case*, Doc. No. 452, at 1–5. Second, Hinkson claims that contacting the warden demonstrates that the Court "has predetermined the outcome of any potential motion for compassionate release based on Mr. Hinkson's terminal illness, without review of any evidence, medical records or pleadings." *Id.*, at 1–2, 5–8. Third, Hinkson asserts a history of "lack of impartiality," again raising the same allegation of *ex parte* contact between the Court and a trial witness Hinkson first raised in 2012—and which this Court and the Ninth Circuit subsequently concluded was without merit. *Id.*, at 2, 8–9. The Court addresses each argument in turn.

**A. Under the statutory scheme, both the Court and the BOP must consider whether the inmate's release would pose a danger to the safety of any other person or the community, and the Court's communication with the warden at Federal Medical Center/Butner on that common issue is not grounds for recusal.**

Motions for compassionate release are governed by 18 U.S.C. § 3582(c)(1), as amended by the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018).  Such motions may be brought either by a defendant who has fully exhausted administrative remedies within the BOP or by the Director of the Bureau of Prisons.  *Id.* § 3582(c)(1)(A); *see also* Federal Bureau of Prisons Program Statement 5050.50, *Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g)* 1 (Jan. 17, 2019) https://www.bop.gov/policy/progstat/5050_050_EN.pdf) [hereinafter *P5050.50*]. If the motion is brought by a defendant, a district court cannot order release without first specifically finding that "the defendant is not a danger to the safety of any other person or the community, as provided under [18 U.S.C. §] 3142(g)."  18 U.S.C. § 3582(c)(1)(A)(ii).  The Court declined to make that finding in its order adjudicating Hinkson's first *pro se* emergency compassionate release motion.  *See Solicitation Case*, Doc. No. 373, at 8.  Similarly, if the request for compassionate release is made by the defendant to the BOP, the BOP—when deciding whether to move the court for release—"should consider whether the inmate's release would

9

pose a danger to the safety of any other person or the community." *P5050.50*, at 12.

BOP guidance also directs that a warden's referral of a request must include either a U.S. Attorney Report on Convicted Offender or else "the views of the prosecuting Assistant U.S. Attorney may be solicited." *Id.*, at 13. Further, if the inmate "is subject to the Victim and Witness Protection Act of 1982 (VWPA), confirmation of notification to the appropriate victim(s) or witness(es) must be incorporated into the Warden's referral. A summary of any comments received must also be incorporated into the referral." *Id.* Although the relevant Program Statement directs that "[b]ecause there is no final agency decision until the Director [of the BOP] has reviewed the request, staff at any level may not contact the sentencing judge or solicit the judge's opinion through other officers of the court," there is no directive that the BOP may not review information received from the sentencing judge. *Id.*, at 14.

As the provisions cited above demonstrate, both the court adjudicating a contemporaneous compassionate release motion and a warden considering whether to recommend that the BOP move the court for compassionate release on behalf of an inmate must consider an inmate's dangerousness. The BOP is mandated to review numerous sources of information in making this determination. In this instance, because Hinkson had formally filed an earlier compassionate release

motion, the Court had already determined that Hinkson's continuing dangerousness was one factor that precluded him from meeting the requirements for compassionate release when he moved for release in May 2020. *See Solicitation Case*, Doc. No. 373, at 8. This information was relevant to the BOP's review of Hinkson's release request under 18 U.S.C. § 3582(c)(1)(A), of which the Court was made aware by a government filing on the public docket on February 19, 2021. *See id.*, Doc. No. 382-1 (January 19, 2021, letter from counsel for Hinkson to the warden of the Federal Medical Center/Butner).[7]

In order to inform the BOP's consideration of Hinkson's identical request, the Court forwarded to the warden at the Federal Medical Center/Butner a copy of its July 7, 2020, order (addressing Hinkson's first motion) and later its March 15, 2021, order (addressing Hinkson's third motion) denying compassionate release. The Court contemporaneously filed copies of its communications to the warden on the docket, *see id.*, Doc. Nos. 383, 384 (and accompanying Staff Notes), and it did so <u>precisely</u> so that there could be no allegation regarding communications from

---

[7] The government filed a copy of this letter on the docket to demonstrate that Hinkson had, in fact, exhausted his administrative remedies and thus was not barred from seeking compassionate release directly from the Court. *See Solicitation Case*, Doc. No. 382. Thus, contrary to what Hinkson seems to imply in his Motion to Disqualify, there was nothing nefarious about the Court's receipt of a copy of this letter from Hinkson's lawyer. *See id.*, Doc. No. 394, at 4; *Tax Case*, Doc. No. 452, at 4 ("Judge Tallman, in his letter [to the warden], acknowledges he somehow was 'provided' with a copy of a letter written by Hinkson's counsel regarding Hinkson's cancer diagnosis.").

the Court of which the defendant was not made aware. Nothing about the Court's course of action would lead a reasonable observer to conclude that the Court harbors a "deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky*, 510 U.S. at 555. Accordingly, the Court denies Hinkson's request for recusal premised on the assertion that it was somehow improper for the Court to communicate with the warden at the facility where Hinkson is held concerning the same request Hinkson had already raised with both the BOP and the Court.

### B. The Court has not predetermined the outcome of potential future motions for compassionate release.

Hinkson's second asserted ground for why the undersigned should recuse is belied by the record. Hinkson argues that the Court "has judged the outcome of any motion for compassionate release without ever hearing or even setting eyes on any evidence or argument to the court." *Solicitation Case*, Doc. No. 394, at 6; *Tax Case*, Doc. No. 452, at 6. This argument ignores the fact that the Court adjudicated Hinkson's third *pro se* emergency motion for compassionate release based on its review of both the government's response and Hinkson's pleadings and his cancer diagnosis medical records—including a motion for reconsideration—in March and April 2021, subsequent to the events of which Hinkson complains in his Motion to Disqualify. *See Solicitation Case*, Doc. Nos. 384, 392; *Tax Case*, Doc. Nos. 446, 450. The Court issued reasoned memoranda

12

and orders denying relief after full briefing by Hinkson and the government, *see id.*, including careful consideration of the extensive BOP medical records provided by the government, *see Solicitation Case*, Doc. No. 381 (sealed).  Hinkson did not appeal from the Court's orders denying relief.

Hinkson is simply wrong when he asserts that the Court has not considered the effect of Hinkson's cancer diagnosis on his dangerousness, or has "decided the outcome of the issue without reviewing a single medical document on Mr. Hinkson's medical condition." *Solicitation Case*, Doc. No. 394, at 8; *Tax Case*, Doc. No. 452, at 8.  The Court carefully considered whether Hinkson remained a danger to others and to the community, notwithstanding his cancer diagnosis, in its March 15, 2021, order denying release.  *See Solicitation Case*, Doc. No. 384, at 13–14; *Tax Case*, Doc. No. 446, at 13–14.  The Court explained that because Hinkson was convicted of soliciting others to murder federal officials on his behalf, "the violent threat he poses to others does not depend on his own ability to engage in such violence, but is based on his financial wherewithal to pay for such endeavors, and the danger is aggravated, not lessened, by his serious illness." *Id.*, at 13.

The Court further found that Hinkson's "motions and prison record demonstrate no inclination to accept responsibility for his prior actions or conform his behavior while incarcerated and . . . [that] he likely has significant funds at his

13

disposal." *Id.* (citing *Solicitation Case*, Doc. No. 271-1, at 617:12–20) (partially sealed)). That Hinkson may disagree with the Court's ruling is not a basis for recusal. *See McTiernan*, 695 F.3d at 893 (stating that a "judge's prior adverse ruling is not sufficient cause for recusal"). Hinkson's request for recusal on this basis is also denied.

### C. Hinkson's claims regarding a history of improper judicial conduct are barred by the law of the case doctrine and by issue preclusion principles.

Hinkson once again argues that the Court must recuse due to an alleged history of improper judicial conduct based on the Court's supposed in-chambers *ex parte* communication with a witness for the prosecution during Hinkson's solicitation trial. *See Solicitation Case*, Doc. No. 394, at 2, 8–9; *Tax Case*, Doc. No. 452, at 2, 8–9. Hinkson raised this <u>same</u> claim in this case in 2012 when he filed a motion to recuse the undersigned judge, attaching the same 2012 Affidavit of Wesley W. Hoyt previously considered by this Court and the Ninth Circuit that he once again resurrects here. *See Solicitation Case*, Doc. No. 322 (2012 motion to recuse attaching Hoyt affidavit). Hinkson also raised this same claim in his 2012 motion to vacate, correct, or set aside his sentence under 28 U.S.C. § 2255. *See id.*, Doc. Nos. 323, at 4; 323-3, at 38–39.[8]

---

[8] These protracted criminal and collateral civil proceedings have been ongoing before the undersigned for more than seventeen years, spawning voluminous

14

This Court ruled against him on this claim both when it denied the 2012 motion to recuse and when it denied the 2012 § 2255 motion.[9]  *See Solicitation Case*, Doc. Nos. 325, at 11–12; 326, at 19–20; *Habeas Petition*, Doc. No. 15, at 19–20.  Although he did not attempt to appeal from the denial of either motion,

---

docket entries and multiple appeals by a recalcitrant and vexatious litigant who continuously seeks to relitigate issues previously resolved against him at every level.  The Court catalogued his demonstrated pattern of vexatious conduct in its August 28, 2012, Order Denying Recusal Motion.  *See Solicitation Case*, Doc. No. 325, at 3–6; *Tax Case*, Doc. No. 423, at 3–6; *Habeas Petition*, Doc. No. 17, at 3–6.  His conduct up until then had included engaging "in protracted frivolous civil litigation in the Federal District Court seeking to abuse the legal process and intimidate federal officials from performing their duties."  *Id.*, at 3–4.  This misbehavior included filing "a number of administrative complaints against the federal officials involved in his tax case, each of which was dismissed, denied, or deemed unfounded."  *Id.*, at 4 (footnote omitted).  He also "sought recusal or reassignment of every judge who has presided over his federal criminal proceedings, including U.S. District Judge Edward J. Lodge, Chief U.S. District Judge B. Lynn Winmill, U.S. Magistrate Judge Mi[kel] Williams, and the undersigned U.S. Circuit Judge Richard C. Tallman (twice)."  *Id.*, at 4–5 (footnotes omitted).

Even before 2012, the Court cited Hinkson's penchant for recusal motions, finding his "*modus operandi* is to harass every court and to seek recusal of all judges against whom he harbors substantial resentment."  *Id.*, at 5 (brackets omitted) (citing *Solicitation Case*, Doc. No. 244, at 29).  The Court predicted in 2005 that "because Hinkson has previously and repeatedly engaged in similar misconduct directed at other judges, prosecutors, investigators, attorneys, and witnesses, it is highly probable that he will continue to engage in similar and additional misconduct in the future."  *Id.*, at 6 (brackets omitted) (citing *Solicitation Case*, Doc. No. 244, at 30).  And so he has.

[9] The Court declined to issue a Certificate of Appealability on this or any other claim included in the § 2255 motion.  *See Solicitation Case*, Doc. No. 326, at 55; *Habeas Petition*, Doc. No. 15, at 55.

Hinkson filed an application for a writ of mandamus in the Ninth Circuit in July 2012, seeking the undersigned judge's removal from the case in part on the basis of the same alleged unfounded *ex parte* witness contact.  *See* Ninth Circuit Case No. 12-72328, Dkt. No. 1, at 16–17.  The Ninth Circuit denied the writ of mandamus in September 2012.  *See id.*, Dkt. No. 3.  Finally, in March 2013, Hinkson filed a judicial misconduct complaint with the Ninth Circuit regarding the same alleged witness contact.  The Circuit dismissed that complaint on August 2, 2016.  *See* Ninth Circuit Case No. 13-90046.[10]

Given the many times in the multiple forums in which this same claim has been decided against Hinkson, the Court finds that Hinkson's repeated argument that the undersigned must recuse due to a history of improper judicial conduct based on this sole alleged instance of witness contact is barred by the law of the case doctrine as well as by issue preclusion.[11]  *See United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997) ("Under the law of the case doctrine, a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." (internal quotation marks

---

[10] The docket for the judicial misconduct complaint is not publicly available, though Hinkson was supplied with the Chief Judge's Order dismissing his complaint.

[11] The Court may consider preclusion *sua sponte*.  *See Hawkins v. Risley*, 984 F.2d 321, 324 (9th Cir. 1993).

and citation omitted)); *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1050 (9th Cir. 2008) ("Issue preclusion prevents a party from relitigating an issue decided in a previous action if four requirements are met."). Hinkson has had "a full and fair opportunity to litigate the issue in [a] previous action;" "the issue was actually litigated in that action;" "the issue was lost as a result of a final judgment in that action; and "the person against whom collateral estoppel is asserted in the present action was a party or in privity with a party in the previous action." *Kendall*, 518 F.3d at 1050 (internal quotation marks and citation omitted).

Hinkson already moved the undersigned to recuse based on this meritless allegation in 2012; the undersigned already found the allegation baseless and declined to recuse. The Ninth Circuit has twice reviewed the issue—once via Hinkson's application for a writ of mandamus and once via his judicial misconduct complaint—and twice concluded Hinkson was not entitled to any relief. His repeated request to recuse on this basis is once again denied.[12]

//
//
//
//
//

---

[12] The Court would deny the request even absent application of the law of the case doctrine or preclusion principles because no reasonable observer would question the Court's impartiality on this basis. *See Holland*, 519 F.3d at 913.

**ORDER**

NOW THEREFORE IT IS HEREBY ORDERED, that the Motion to Disqualify Judge Richard C. Tallman (*Solicitation Case*, Doc. No. 394; *Tax Case*, Doc. No. 452) is DENIED.

DATED: September 22, 2021

Richard C. Tallman
UNITED STATES CIRCUIT JUDGE